# EXHIBIT 1

(Executive Order 13990 of January 20, 2021)



# Presidential Documents

Executive Order 13990 of January 20, 2021

## Protecting Public Health and the Environment and Restoring Science To Tackle the Climate Crisis

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered as follows:

**Section 1**. *Policy.* Our Nation has an abiding commitment to empower our workers and communities; promote and protect our public health and the environment; and conserve our national treasures and monuments, places that secure our national memory. Where the Federal Government has failed to meet that commitment in the past, it must advance environmental justice. In carrying out this charge, the Federal Government must be guided by the best science and be protected by processes that ensure the integrity of Federal decision-making. It is, therefore, the policy of my Administration to listen to the science; to improve public health and protect our environment; to ensure access to clean air and water; to limit exposure to dangerous chemicals and pesticides; to hold polluters accountable, including those who disproportionately harm communities of color and low-income communities; to reduce greenhouse gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

To that end, this order directs all executive departments and agencies (agencies) to immediately review and, as appropriate and consistent with applicable law, take action to address the promulgation of Federal regulations and other actions during the last 4 years that conflict with these important national objectives, and to immediately commence work to confront the climate crisis.

**Sec. 2**. *Immediate Review of Agency Actions Taken Between January 20, 2017, and January 20, 2021.* (a) The heads of all agencies shall immediately review all existing regulations, orders, guidance documents, policies, and any other similar agency actions (agency actions) promulgated, issued, or adopted between January 20, 2017, and January 20, 2021, that are or may be inconsistent with, or present obstacles to, the policy set forth in section 1 of this order. For any such actions identified by the agencies, the heads of agencies shall, as appropriate and consistent with applicable law, consider suspending, revising, or rescinding the agency actions. In addition, for the agency actions in the 4 categories set forth in subsections (i) through (iv) of this section, the head of the relevant agency, as appropriate and consistent with applicable law, shall consider publishing for notice and comment a proposed rule suspending, revising, or rescinding the agency action within the time frame specified.

(i) Reducing Methane Emissions in the Oil and Gas Sector: ''Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources Reconsideration,'' 85 FR 57398 (September 15, 2020), by September 2021.

(ii) Establishing Ambitious, Job-Creating Fuel Economy Standards: ''The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One National Program,'' 84 FR 51310 (September 27, 2019), by April 2021; and ''The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule for Model Years 2021–2026 Passenger Cars and Light Trucks,'' 85 FR 24174 (April 30,

2020), by July 2021. In considering whether to propose suspending, revising, or rescinding the latter rule, the agency should consider the views of representatives from labor unions, States, and industry.

(iii) Job-Creating Appliance- and Building-Efficiency Standards: ''Energy Conservation Program for Appliance Standards: Procedures for Use in New or Revised Energy Conservation Standards and Test Procedures for Consumer Products and Commercial/Industrial Equipment,'' 85 FR 8626 (February 14, 2020), with major revisions proposed by March 2021 and any remaining revisions proposed by June 2021; ''Energy Conservation Program for Appliance Standards: Procedures for Evaluating Statutory Factors for Use in New or Revised Energy Conservation Standards,'' 85 FR 50937 (August 19, 2020), with major revisions proposed by March 2021 and any remaining revisions proposed by June 2021; ''Final Determination Regarding Energy Efficiency Improvements in the 2018 International Energy Conservation Code (IECC),'' 84 FR 67435 (December 10, 2019), by May 2021; ''Final Determination Regarding Energy Efficiency Improvements in ANSI/ASHRAE/IES Standard 90.1–2016: Energy Standard for Buildings, Except Low-Rise Residential Buildings,'' 83 FR 8463 (February 27, 2018), by May 2021.

(iv) Protecting Our Air from Harmful Pollution: ''National Emission Standards for Hazardous Air Pollutants: Coal- and Oil-Fired Electric Utility Steam Generating Units—Reconsideration of Supplemental Finding and Residual Risk and Technology Review,'' 85 FR 31286 (May 22, 2020), by August 2021; ''Increasing Consistency and Transparency in Considering Benefits and Costs in the Clean Air Act Rulemaking Process,'' 85 FR 84130 (December 23, 2020), as soon as possible; ''Strengthening Transparency in Pivotal Science Underlying Significant Regulatory Actions and Influential Scientific Information,'' 86 FR 469 (January 6, 2021), as soon as possible.

(b) Within 30 days of the date of this order, heads of agencies shall submit to the Director of the Office of Management and Budget (OMB) a preliminary list of any actions being considered pursuant to section (2)(a) of this order that would be completed by December 31, 2021, and that would be subject to OMB review. Within 90 days of the date of this order, heads of agencies shall submit to the Director of OMB an updated list of any actions being considered pursuant to section (2)(a) of this order that would be completed by December 31, 2025, and that would be subject to OMB review. At the time of submission to the Director of OMB, heads of agencies shall also send each list to the National Climate Advisor. In addition, and at the same time, heads of agencies shall send to the National Climate Advisor a list of additional actions being considered pursuant to section (2)(a) of this order that would not be subject to OMB review.

(c) Heads of agencies shall, as appropriate and consistent with applicable law, consider whether to take any additional agency actions to fully enforce the policy set forth in section 1 of this order. With respect to the Administrator of the Environmental Protection Agency, the following specific actions should be considered:

(i) proposing new regulations to establish comprehensive standards of performance and emission guidelines for methane and volatile organic compound emissions from existing operations in the oil and gas sector, including the exploration and production, transmission, processing, and storage segments, by September 2021; and

(ii) proposing a Federal Implementation Plan in accordance with the Environmental Protection Agency's ''Findings of Failure To Submit State Implementation Plan Revisions in Response to the 2016 Oil and Natural Gas Industry Control Techniques Guidelines for the 2008 Ozone National Ambient Air Quality Standards (NAAQS) and for States in the Ozone Transport Region,'' 85 FR 72963 (November 16, 2020), for California, Connecticut, New York, Pennsylvania, and Texas by January 2022.

(d) The Attorney General may, as appropriate and consistent with applicable law, provide notice of this order and any actions taken pursuant to section 2(a) of this order to any court with jurisdiction over pending litigation related to those agency actions identified pursuant to section (2)(a) of this order, and may, in his discretion, request that the court stay or otherwise dispose of litigation, or seek other appropriate relief consistent with this order, until the completion of the processes described in this order.

(e) In carrying out the actions directed in this section, heads of agencies shall seek input from the public and stakeholders, including State local, Tribal, and territorial officials, scientists, labor unions, environmental advocates, and environmental justice organizations.

**Sec. 3**. *Restoring National Monuments.* (a) The Secretary of the Interior, as appropriate and consistent with applicable law, including the Antiquities Act, 54 U.S.C. 320301 *et seq.,* shall, in consultation with the Attorney General, the Secretaries of Agriculture and Commerce, the Chair of the Council on Environmental Quality, and Tribal governments, conduct a review of the monument boundaries and conditions that were established by Proclamation 9681 of December 4, 2017 (Modifying the Bears Ears National Monument); Proclamation 9682 of December 4, 2017 (Modifying the Grand Staircase-Escalante National Monument); and Proclamation 10049 of June 5, 2020 (Modifying the Northeast Canyons and Seamounts Marine National Monument), to determine whether restoration of the monument boundaries and conditions that existed as of January 20, 2017, would be appropriate.

(b) Within 60 days of the date of this order, the Secretary of the Interior shall submit a report to the President summarizing the findings of the review conducted pursuant to subsection (a), which shall include recommendations for such Presidential actions or other actions consistent with law as the Secretary may consider appropriate to carry out the policy set forth in section 1 of this order.

(c) The Attorney General may, as appropriate and consistent with applicable law, provide notice of this order to any court with jurisdiction over pending litigation related to the Grand Staircase-Escalante, Bears Ears, and Northeast Canyons and Seamounts Marine National Monuments, and may, in his discretion, request that the court stay the litigation or otherwise delay further litigation, or seek other appropriate relief consistent with this order, pending the completion of the actions described in subsection (a) of this section.

**Sec. 4**. *Arctic Refuge.* (a) In light of the alleged legal deficiencies underlying the program, including the inadequacy of the environmental review required by the National Environmental Policy Act, the Secretary of the Interior shall, as appropriate and consistent with applicable law, place a temporary moratorium on all activities of the Federal Government relating to the implementation of the Coastal Plain Oil and Gas Leasing Program, as established by the Record of Decision signed August 17, 2020, in the Arctic National Wildlife Refuge. The Secretary shall review the program and, as appropriate and consistent with applicable law, conduct a new, comprehensive analysis of the potential environmental impacts of the oil and gas program.

(b) In Executive Order 13754 of December 9, 2016 (Northern Bering Sea Climate Resilience), and in the Presidential Memorandum of December 20, 2016 (Withdrawal of Certain Portions of the United States Arctic Outer Continental Shelf From Mineral Leasing), President Obama withdrew areas in Arctic waters and the Bering Sea from oil and gas drilling and established the Northern Bering Sea Climate Resilience Area. Subsequently, the order was revoked and the memorandum was amended in Executive Order 13795 of April 28, 2017 (Implementing an America-First Offshore Energy Strategy). Pursuant to section 12(a) of the Outer Continental Shelf Lands Act, 43 U.S.C. 1341(a), Executive Order 13754 and the Presidential Memorandum of December 20, 2016, are hereby reinstated in their original form, thereby restoring the original withdrawal of certain offshore areas in Arctic waters and the Bering Sea from oil and gas drilling.

(c) The Attorney General may, as appropriate and consistent with applicable law, provide notice of this order to any court with jurisdiction over pending litigation related to the Coastal Plain Oil and Gas Leasing Program in the Arctic National Wildlife Refuge and other related programs, and may, in his discretion, request that the court stay the litigation or otherwise delay further litigation, or seek other appropriate relief consistent with this order, pending the completion of the actions described in subsection (a) of this section.

**Sec. 5**. *Accounting for the Benefits of Reducing Climate Pollution.* (a) It is essential that agencies capture the full costs of greenhouse gas emissions as accurately as possible, including by taking global damages into account. Doing so facilitates sound decision-making, recognizes the breadth of climate impacts, and supports the international leadership of the United States on climate issues. The ''social cost of carbon'' (SCC), ''social cost of nitrous oxide'' (SCN), and ''social cost of methane'' (SCM) are estimates of the monetized damages associated with incremental increases in greenhouse gas emissions. They are intended to include changes in net agricultural productivity, human health, property damage from increased flood risk, and the value of ecosystem services. An accurate social cost is essential for agencies to accurately determine the social benefits of reducing greenhouse gas emissions when conducting cost-benefit analyses of regulatory and other actions.

(b) There is hereby established an Interagency Working Group on the Social Cost of Greenhouse Gases (the ''Working Group''). The Chair of the Council of Economic Advisers, Director of OMB, and Director of the Office of Science and Technology Policy shall serve as Co-Chairs of the Working Group.

(i) Membership. The Working Group shall also include the following other officers, or their designees: the Secretary of the Treasury; the Secretary of the Interior; the Secretary of Agriculture; the Secretary of Commerce; the Secretary of Health and Human Services; the Secretary of Transportation; the Secretary of Energy; the Chair of the Council on Environmental Quality; the Administrator of the Environmental Protection Agency; the Assistant to the President and National Climate Advisor; and the Assistant to the President for Economic Policy and Director of the National Economic Council.

(ii) Mission and Work. The Working Group shall, as appropriate and consistent with applicable law:

(A) publish an interim SCC, SCN, and SCM within 30 days of the date of this order, which agencies shall use when monetizing the value of changes in greenhouse gas emissions resulting from regulations and other relevant agency actions until final values are published;

(B) publish a final SCC, SCN, and SCM by no later than January 2022;

(C) provide recommendations to the President, by no later than September 1, 2021, regarding areas of decision-making, budgeting, and procurement by the Federal Government where the SCC, SCN, and SCM should be applied;

(D) provide recommendations, by no later than June 1, 2022, regarding a process for reviewing, and, as appropriate, updating, the SCC, SCN, and SCM to ensure that these costs are based on the best available economics and science; and

(E) provide recommendations, to be published with the final SCC, SCN, and SCM under subparagraph (A) if feasible, and in any event by no later than June 1, 2022, to revise methodologies for calculating the SCC, SCN, and SCM, to the extent that current methodologies do not adequately take account of climate risk, environmental justice, and intergenerational equity.

(iii) *Methodology.* In carrying out its activities, the Working Group shall consider the recommendations of the National Academies of Science, Engineering, and Medicine as reported in Valuing Climate Damages: Updating Estimation of the Social Cost of Carbon Dioxide (2017) and other pertinent scientific literature; solicit public comment; engage with the public and stakeholders; seek the advice of ethics experts; and ensure that the SCC, SCN, and SCM reflect the interests of future generations in avoiding threats posed by climate change.

**Sec. 6**. *Revoking the March 2019 Permit for the Keystone XL Pipeline.* (a) On March 29, 2019, the President granted to TransCanada Keystone Pipeline, L.P. a Presidential permit (the ''Permit'') to construct, connect, operate, and maintain pipeline facilities at the international border of the United States and Canada (the ''Keystone XL pipeline''), subject to express conditions and potential revocation in the President's sole discretion. The Permit is hereby revoked in accordance with Article 1(1) of the Permit.

(b) In 2015, following an exhaustive review, the Department of State and the President determined that approving the proposed Keystone XL pipeline would not serve the U.S. national interest. That analysis, in addition to concluding that the significance of the proposed pipeline for our energy security and economy is limited, stressed that the United States must prioritize the development of a clean energy economy, which will in turn create good jobs. The analysis further concluded that approval of the proposed pipeline would undermine U.S. climate leadership by undercutting the credibility and influence of the United States in urging other countries to take ambitious climate action.

(c) Climate change has had a growing effect on the U.S. economy, with climate-related costs increasing over the last 4 years. Extreme weather events and other climate-related effects have harmed the health, safety, and security of the American people and have increased the urgency for combatting climate change and accelerating the transition toward a clean energy economy. The world must be put on a sustainable climate pathway to protect Americans and the domestic economy from harmful climate impacts, and to create well-paying union jobs as part of the climate solution.

(d) The Keystone XL pipeline disserves the U.S. national interest. The United States and the world face a climate crisis. That crisis must be met with action on a scale and at a speed commensurate with the need to avoid setting the world on a dangerous, potentially catastrophic, climate trajectory. At home, we will combat the crisis with an ambitious plan to build back better, designed to both reduce harmful emissions and create good clean-energy jobs. Our domestic efforts must go hand in hand with U.S. diplomatic engagement. Because most greenhouse gas emissions originate beyond our borders, such engagement is more necessary and urgent than ever. The United States must be in a position to exercise vigorous climate leadership in order to achieve a significant increase in global climate action and put the world on a sustainable climate pathway. Leaving the Keystone XL pipeline permit in place would not be consistent with my Administration's economic and climate imperatives.

**Sec. 7**. *Other Revocations.* (a) Executive Order 13766 of January 24, 2017 (Expediting Environmental Reviews and Approvals For High Priority Infrastructure Projects), Executive Order 13778 of February 28, 2017 (Restoring the Rule of Law, Federalism, and Economic Growth by Reviewing the ''Waters of the United States'' Rule), Executive Order 13783 of March 28, 2017 (Promoting Energy Independence and Economic Growth), Executive Order 13792 of April 26, 2017 (Review of Designations Under the Antiquities Act), Executive Order 13795 of April 28, 2017 (Implementing an America-First Offshore Energy Strategy), Executive Order 13868 of April 10, 2019 (Promoting Energy Infrastructure and Economic Growth), and Executive Order 13927 of June 4, 2020 (Accelerating the Nation's Economic Recovery from the COVID–19 Emergency by Expediting Infrastructure Investments and Other Activities), are hereby revoked. Executive Order 13834 of May 17, 2018

(Efficient Federal Operations), is hereby revoked except for sections 6, 7, and 11.

(b) Executive Order 13807 of August 15, 2017 (Establishing Discipline and Accountability in the Environmental Review and Permitting Process for Infrastructure Projects), is hereby revoked. The Director of OMB and the Chair of the Council on Environmental Quality shall jointly consider whether to recommend that a replacement order be issued.

(c) Executive Order 13920 of May 1, 2020 (Securing the United States Bulk-Power System), is hereby suspended for 90 days. The Secretary of Energy and the Director of OMB shall jointly consider whether to recommend that a replacement order be issued.

(d) The Presidential Memorandum of April 12, 2018 (Promoting Domestic Manufacturing and Job Creation Policies and Procedures Relating to Implementation of Air Quality Standards), the Presidential Memorandum of October 19, 2018 (Promoting the Reliable Supply and Delivery of Water in the West), and the Presidential Memorandum of February 19, 2020 (Developing and Delivering More Water Supplies in California), are hereby revoked.

(e) The Council on Environmental Quality shall rescind its draft guidance entitled, ''Draft National Environmental Policy Act Guidance on Consideration of Greenhouse Gas Emissions,'' 84 FR 30097 (June 26, 2019). The Council, as appropriate and consistent with applicable law, shall review, revise, and update its final guidance entitled, ''Final Guidance for Federal Departments and Agencies on Consideration of Greenhouse Gas Emissions and the Effects of Climate Change in National Environmental Policy Act Reviews,'' 81 FR 51866 (August 5, 2016).

(f) The Director of OMB and the heads of agencies shall promptly take steps to rescind any orders, rules, regulations, guidelines, or policies, or portions thereof, including, if necessary, by proposing such rescissions through notice-and-comment rulemaking, implementing or enforcing the Executive Orders, Presidential Memoranda, and draft guidance identified in this section, as appropriate and consistent with applicable law.

**Sec. 8**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented in a manner consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*January 20, 2021.*

[FR Doc. 2021–01765
Filed 1–22–21; 11:15 am]
Billing code 3295–F1–P

Case 3:20-cv-00204-SLG   Document 71-1   Filed 01/28/21   Page 8 of 8